USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-28-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RONNIE SLEDGE,

                           Plaintiff,                          11 Civ. 7450 (PKC)

        -against-                            MEMORANDUM
                                                       AND ORDER

J. FEIN,

                           Defendant.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Ronnie Sledge, proceeding pro se, brings this action against defendant J.

Fein under 42 U.S.C. § 1983.  Barnes is an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").  Fein is a medical doctor

who treats patients at the Green Haven Correctional Facility ("Green Haven" or "GHCF"), where

plaintiff was previously incarcerated.  Sledge alleges that Dr. Fein has been deliberately

indifferent to Sledge's allegedly serious medical needs in violation of the Eighth Amendment, as

applied here through the Fourteenth Amendment's Due Process Clause.

        In a Memorandum and Order dated August 2, 2012, the Court dismissed the

original complaint against Dr. Fein's co-defendant, Dr. Frederick Bernstein, for failure to state a

claim upon which relief could be granted.  Sledge v. Bernstein, 11 Civ. 7450 (PKC), 2012 WL

4761582 (S.D.N.Y. Aug. 2, 2012) (the "August 2 Opinion").

        The Court subsequently received plaintiff's notice of motion for leave to amend

the complaint under Rule 15(a), Fed. R. Civ. P., and plaintiff's proposed amended complaint,

both dated October 12, 2012.  The proposed amended complaint names Dr. Fein as the sole

defendant.

Before the Court ruled on plaintiff's motion to amend, Dr. Fein moved in response to plaintiff's proposed amended complaint, which appears on the docket as an exhibit to Dr. Fein's motion to dismiss.  (Dk. #28.)  The Court hereby grants plaintiff's motion to amend the complaint and proceeds to address Dr. Fein's motion under Rule 12(b)(6), Fed. R. Civ. P., to dismiss the amended complaint.  As explained below, and for reasons substantially similar to those stated in the August 2 Opinion, Dr. Fein's motion is granted.

BACKGROUND

The following facts are taken from the amended complaint ("complaint" or "Compl.") and are assumed to be true for the purpose deciding defendant's motion to dismiss. All reasonable inferences are drawn in favor of plaintiff, the non-movant.[1]

When Sledge arrived at Green Haven on October 7, 2010, a property intake officer confiscated Sledge's personal medications and his back and knee braces.  (Compl. § VI, ¶ 1.)  He was told that, going forward, any medications would be prescribed according to Green Haven's standards.  (Id.)

On October 12, 2010, Sledge informed the Green Haven staff that a three-day period without pain medication for his "chronic back problems" was causing "extreme pain and limited movement."  (Id. ¶ 2.)  The following day, Sledge repeated these concerns to Dr. Fein and also expressed the desire to be assigned to the bottom bunk in a cell on the first floor of the facility; Dr. Fein recommended that x-rays be taken of Sledge's back and knees.  (Id. ¶ 3.)

The x-rays were taken on October 15.  (Id. ¶ 4.)  The same day, Sledge reiterated to Dr. Fein his concern that he was not receiving medication for his back problems "even though it was clearly in his medical record that this medication was needed."  (Id.)  Dr. Fein provided

---

[1] In light of plaintiff's pro se status, the Court has also reviewed and considered plaintiff's declaration dated February 4, 2013.

plaintiff with several packets of ibuprofen.  (Id.)  When Sledge told Dr. Fein that ibuprofen had previously been prescribed but was discontinued because it was ineffective and because it upset plaintiff's stomach, Dr. Fein stated that Sledge "would have to make [do]."  (Id.)

On October 20, 2010, Sledge was moved into a double-bunk cell.  (Id. ¶ 5.)  On October 27, 2010, he again saw Dr. Fein, who explained that the x-rays revealed arthritis in Sledge's knees and bone deterioration in his back.  (Id. ¶ 6.)

On or about November 13, 2010, Sledge had an asthma attack, during which he hit his head on the railing of the bunk above his bed as he reached for his asthma medication. (Id. ¶ 7.)  On November 17, 2010, he attended "sick call," complaining to the Green Haven staff of "pounding headaches, light-headedness and swelling in the area" where he hit his head.  (Id. ¶ 8.)  He explained that he had experienced asthma attacks over the preceding four days and that he had treated his head with ice.  (Id.)

On November 29, 2010, Sledge repeated these concerns to Dr. Fein, explaining that he repeatedly hit his head on the bed frame during asthma attacks and that he believed the attacks were made more frequent by the dirty and enclosed condition of his cell.  (Id. ¶ 9.)  The following day, plaintiff received a different asthma medication, one that plaintiff alleges had previously been prescribed at another facility but which was discontinued due to ineffectiveness. (Id. ¶ 10.)  The medication was once again ineffective in treating plaintiff's asthma, and he received no additional medication for his other symptoms: "pounding headaches, light headedness, inability to sleep and feeling fatigued from lack of adequate sleep."  (Id.)

On December 15, 2010, Sledge informed Dr. Fein by letter that the asthma medication was ineffective and that plaintiff was still experiencing asthma attacks at night and hitting his head.  (Id. ¶ 11.)  He asked to be moved to a cell without a double bunk.  (Id.)

On December 22, 2010, Sledge again met with Dr. Fein and reiterated his concerns.  (Id. ¶ 12.)  Plaintiff also informed Dr. Fein that plaintiff had "swelling around his left thumb from landing awkwardly on the floor after banging his head . . . on the railing of the bunk."  (Id.)  Dr. Fein gave plaintiff aspirin for his pain and headaches but took no further action in response to plaintiff's thumb injury, stating that Sledge would have to speak with Dr. Bernstein.  (Id.)

On January 7, 2011, Sledge again attended sick call and also filed a grievance. (Id. ¶ 13.)  On January 13, 2011, he reiterated his concerns to both Dr. Fein and Dr. Bernstein, clarifying that "his situation is not just about being in a double bunk, but about injuries sustained while plaintiff is in a double bunk, and that plaintiff continues to hit his head which is causing serious problems [and] the aspirin is not working."  (Id. ¶ 14.)  On February 3, 2011, Sledge informed both doctors by letter that his problems, including swelling in his hand, continued.  (Id. ¶ 15.)  He again expressed concern regarding the cleanliness of the facility to the Green Haven staff on February 16, 2011.  (Id. ¶ 17.)

Sledge saw Dr. Fein on February 28, 2011, expressing the same concerns, and was told that x-rays had been scheduled; he was given no additional medication.  (Id. ¶ 18.) After attending sick call on March 14, 2011, Sledge saw Dr. Fein again on March 21, 2011, reporting that he continued to suffer three to four asthma attacks a week.  (Id. ¶¶ 19, 20.)

On March 31, 2011, x-rays are taken of plaintiff's head and left hand.  (Id. ¶ 21.) On April 12, 2011, he was seen by Dr. Fein, who stated that "plaintiff has arthritis in his left hand . . . and no []abnormalities on his skull."  (Id. ¶ 22.)  The complaint alleges that when plaintiff asked Dr. Fein why he was still experiencing headaches, Dr. Fein said that "he would just have to deal with it (the pain)."  (Id.)  Dr. Fein told plaintiff that he would prescribe anti-

4

inflammatory medication for plaintiff's hand but plaintiff never received this medication.  (Id. ¶¶ 22, 23.)  When plaintiff complained to Dr. Fein that he could not do his physical therapy exercises in his double-bunk cell due to space constraints, Dr. Fein said he would speak to Dr. Bernstein about plaintiff's housing situation and medical needs.  (Id. ¶ 22.)  On May 9, 2011, Sledge attended sick call and was told that there was no indication in his medical records that any anti-inflammatory medication was prescribed for him.  (Id. ¶ 24.)  On June 1, 2011, plaintiff saw Dr. Fein with the same complaints and was told again "he was just going to have to deal with the pain."  (Id. ¶ 25.)

On June 24 and July 5, 2011, plaintiff attended sick call and was told he would see his medical provider.  (Id. ¶¶ 27, 28.)  On July 12, 2011, plaintiff was seen by Physician Assistant B. Rodas, who told plaintiff that he could only recommend that plaintiff be seen by his medical provider.  (Id. ¶ 29.)

After attending sick call on August 1, 2011, Sledge saw Dr. Fein on August 2 and 11, 2011 and reported similar ongoing symptoms.  (Id. ¶¶ 30-32.)  In response to plaintiff's repeated attendance at sick call over the next several months (id. ¶¶ 33, 37, 39, 41, 43), plaintiff saw Dr. Fein again on September 9 and December 15 of 2011.  (Id. ¶¶ 34, 40.)

During this period, in October, plaintiff submitted a letter to Dr. Bernstein (id. ¶ 35) and, during an examination of plaintiff's back by the Department of Veterans Affairs in November, plaintiff was afforded a brief opportunity to speak with Dr. Bernstein, who advised him that he should take up his condition with his medical provider.  (Id. ¶ 36.)  In December, plaintiff also submitted a letter to Dr. Fein complaining of his medical problems and requesting that he be "placed on a medical call out to address these issues."  (Id. ¶ 38.)

Plaintiff attended sick call on January 23, 2012 and, on January 30, he was seen by Dr. Fein, who provided plaintiff with "non-aspirin" medication.  (Id. ¶¶ 41, 42.)  After attending sick call on February 13, plaintiff saw Dr. Fein again on February 14 and explained that the non-aspirin medication was not effective.  (Id. ¶¶ 43, 44.)  He also told Dr. Fein that "he was starting to experience acute nausea whenever he experienced a headache."  (Id.)  Dr. Fein gave him "a few non-aspirins and told [him] to try to deal with his situation."  (Id.)

Sledge attended sick call on April 9, 2012 (id. ¶ 45) and saw Dr. Fein on April 11, 2012 with complaints of "headaches which were coming more frequent[ly], acute nausea and vomiting when experiencing headaches, pain and swelling in [his] left hand, light headed[ness], [being] unable to sleep, [and] pain in [his] knees and back."  (Id. ¶ 46.)  Dr. Fein told plaintiff he would write a prescription for sumatriptan, a migraine medication.  (Id.)

Plaintiff again attended sick call on April 23, 2012 (id. ¶ 47) and saw Dr. Fein on May 24, 2012 with complaints of "headaches . . . [nausea] and vomiting when experiencing an attack of headaches, [an] increase of asthma attacks, dizziness and losing weight from vomiting his food, [and] lack of sleep."  (Id. ¶ 48.)  Plaintiff also stated that "his vision was [a]ffected as well whenever he experienced a headache" in that he would "see[] sparkles."  (Id.)

Plaintiff reported similar problems to Dr. Fein on July 11, 2012.  (Id. ¶ 49.)  On August 24, 2012, he told Dr. Fein that his conditions were getting worse and that he "experienced a bout of dizziness and fell momentarily in his cell."  (Id. ¶ 50.)  Dr. Fein told plaintiff that "all of plaintiff's symptoms were typical for his condition" and that "he would just have to make [do]."  (Id.)

Plaintiff alleges that he continues to suffer from these conditions and continues to address them by attending sick call and all medical appointments.  (Id. ¶ 51.)

DISCUSSION

I.  Pleading Standards

        To survive a motion to dismiss for failure to state a claim upon which relief can

be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint, courts draw all

reasonable inferences in favor of the non-movant.  See In re Elevator Antitrust Litig., 502 F.3d

47, 50 (2d Cir. 2007) (per curiam).  Legal conclusions, however, are not entitled to any

presumption of truth.  Iqbal, 556 U.S. at 678.  Instead, the court must examine the well-pleaded

factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement

to relief."  Id. at 679.  Nevertheless, "a pro se complaint, however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus,

551 U.S. 89, 94 (2007) (citation and quotation marks omitted), and courts continue to afford

special solicitude to pro se complaints after Iqbal and Twombly.  See Harris v. Mills, 572 F.3d

66, 72 (2d Cir. 2009).

II.  Eighth Amendment Standards

        The Eighth Amendment prohibits infliction of "cruel and unusual punishments,"

U.S. Const. amend. VIII, including punishments that "involve the unnecessary and wanton

infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  "In the case of a state prisoner,

it is the Eighth Amendment as applied to the States by the Fourteenth Amendment."  Caiozzo v.

Koreman, 581 F.3d 63, 69 n.3 (2d Cir. 2009).  A prison official's "deliberate indifference to

serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" in

7

violation of the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg, 428 U.S. at 173).

The deliberate indifference standard has two prongs.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The first prong is objective: "the alleged deprivation of adequate medical care must be sufficiently serious."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citation and quotation marks omitted).  The second prong is subjective: "the charged official must act with a sufficiently culpable state of mind."  Id. at 280.

The objective prong is divided into two subparts.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required.  Id. at 279.  "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id. at 280.  Thus, in cases of delayed or inadequate care, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."  Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

The subjective prong requires that the prisoner establish that the defendant acted with a "sufficiently culpable state of mind."  Salahuddin, 467 F.3d at 280.  The standard is deliberate indifference to the prisoner's health, "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  Id.  The standard requires that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

III. <u>The Complaint Fails To State An Eighth Amendment Claim</u>

        The complaint contains four counts, each alleging a violation of the Eighth Amendment.  As explained below, for the most part, the complaint fails to allege a sufficiently serious medical condition—"a condition of urgency, one that may produce death, degeneration, or extreme pain."  <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005) (citation and quotation marks omitted).  But, even assuming that the conditions alleged could, if left untreated, be the predicate for an Eighth Amendment deliberate-indifference claim, plaintiff received "reasonable care" for these conditions, which is all that the Eighth Amendment requires.  <u>Salahuddin</u>, 467 F.3d at 279.  Moreover, the complaint does not plausibly allege the subjective prong of a deliberate-indifference claim—that Dr. Fein consciously disregarded an excessive risk to plaintiff's health.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.

        Count I alleges that Dr. Fein violated plaintiff's Eighth Amendment rights when he "denied" or "delayed" or "interfered with Plaintiff's once prescribed necessary medication for Mr. Sledge's asthma, skin, and back problems . . . ."  (Compl. § VI, ¶ 59.)  At the outset, the complaint contains no factual allegations concerning plaintiff's skin problems, except that he arrived at Green Haven with skin medication.  (<u>Id.</u> ¶ 1.)  As it concerns plaintiff's back, Count I fails to state an Eighth Amendment claim; even assuming for present purposes that the bone deterioration in plaintiff's back, if left untreated, would constitute a sufficiently serious medical condition, Dr. Fein was not indifferent to that condition.  Plaintiff routinely met with Dr. Fein, who, in addition to performing x-rays to diagnose plaintiff's back condition, provided him with pain medications, including aspirin, ibuprofen, and other "non-aspirin" drugs.  Similarly, although severe asthma, if left untreated, could be a sufficiently serious medical condition, plaintiff's asthma did not go untreated.  Plaintiff received asthma medication and regularly

consulted with Dr. Fein regarding his symptoms.  Sledge also consulted with Dr. Fein and received reasonable care for collateral health issues such as the headaches and thumb injury he allegedly suffered during asthma attacks.  Courts in this district have held that neither a severe headache nor a swollen hand constitutes a sufficiently serious medical condition.  See Sledge, 2012 WL 4761582, at *5 (citing cases).  In any case, plaintiff received reasonable care for his headaches and his hand in the form of x-rays, the pain medications mentioned above, and sumatriptan, a migraine medication.  Thus, in each case, plaintiff received reasonable care.  That plaintiff would have preferred different treatment is not sufficient to state an Eighth Amendment claim.  See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

Count II alleges that Dr. Fein violated plaintiff's Eighth Amendment rights when, knowing of plaintiff's medical conditions, he "refused to recommend to security staff the need for plaintiff to be assigned to a single cell . . . ."  (Compl. § VI, ¶ 62.)  As already noted, Dr. Fein provided plaintiff with pain and migraine medication to help him cope with the injuries he allegedly suffered as a result of being housed in a double-bunk cell.  Dr. Fein's failure to make a specific treatment recommendation to the Green Haven staff that plaintiff receive his own cell does not approach the threshold for an Eighth Amendment deliberate-indifference claim, even assuming that a single cell might have helped to alleviate plaintiff's medical conditions.  See Chance, 143 F.3d at 703.

Count III alleges that, in light of "[p]laintiff's chronic asthma illness, his constant banging of his head . . . , and daily second hand smoke exposure," Dr. Fein violated plaintiff's Eighth Amendment rights when he "denied necessary medical treatment and necessary recommendation for single cell, housing . . . ."  (Compl. § VI, ¶¶ 64, 65.)  To the extent Count III

10

alleges anything different than Counts I and II, it alleges that Dr. Fein was deliberately indifferent to plaintiff's dangerous exposure to second-hand smoke.  While allegations of the type can state an Eighth Amendment claim, see Helling v. McKinney, 509 U.S. 25, 35 (1993), Sledge fails to plausibly allege the subjective prong of the deliberate-indifference test with respect to Dr. Fein.  The complaint alleges that smoking indoors violates DOCCS policy but that it is nonetheless tolerated at Green Haven.  (Id. ¶ 9.)  There is no indication in the complaint, nor is it reasonable to assume, that Dr. Fein had anything to do with the enforcement or non-enforcement of the non-smoking policy at Green Haven or that he could have saved plaintiff from exposure to second-hand smoke.  Indeed, Sledge does not allege that any of his cellmates were smokers.  Thus, the well-pleaded allegations do not give rise to the inference that Dr. Fein acted in conscious disregard of an excessive risk of harm to plaintiff's health.  See Farmer, 511 U.S. at 837.

Count IV alleges that, in light of plaintiff's "daily headaches" and "pain on his left arm thumb area," Dr. Fein violated plaintiff's Eighth Amendment rights when he "delayed and denied necessary medical care . . . for [plaintiff's] asthma, and [failed to] prescribe[] anti-inflammatory medication to reduce and control his pain and suffering and prevent his conditions from exacerbating . . . ." (Compl. § VI, ¶¶ 66, 67.)  Again, much of this count rehashes Counts I through III.  To the extent it adds anything new, Count IV alleges that Dr. Fein's failure to provide plaintiff anti-inflammatory medication for his injured thumb constituted an Eighth Amendment violation.  As noted above, plaintiff's swollen finger was not a sufficiently serious medical condition.  And, even if it were, plaintiff received reasonable treatment for that condition in the form of x-rays (which revealed only arthritis) and pain medications.  Moreover,

even if, as plaintiff appears to allege, Dr. Fein meant to prescribe anti-inflammatory medication but negligently failed to do so, this would not constitute deliberate indifference.

Finally, to the extent plaintiff bases any of his claims on delays in treatment, the delays alleged in the complaint do not rise to the level of a constitutional violation.  Although plaintiff alleges that his medical care was, in his view, unsatisfactory over the course of several months, he did not go for any significant period of time without medical care.  The complaint alleges that Sledge received x-rays and medication within days of arriving at Green Haven and a revised asthma prescription within two months.  Indeed, plaintiff alleges that he met with Dr. Fein in person approximately 20 times during the roughly two-year period covered in the complaint.  Plaintiff draws attention to the gap between when he reported his thumb injury to Dr. Fein (December 22, 2010) and when his hand was x-rayed (March 31, 2011), but plaintiff also alleges that he received aspirin the same day he reported his thumb injury and that the x-rays, once performed, revealed only arthritis in his hand.  Thus, this delay fails to state an Eighth Amendment claim.  Cf. Chance, 143 F.3d at 702-703 (holding allegation of inadequate dental treatment spanning six months that resulted in extreme pain, tooth deterioration, and inability to eat properly was sufficiently serious to survive motion to dismiss); Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir. 1988) (holding allegation in plaintiff's affidavit of two-year delay in surgery to correct broken pins in hip was sufficient to survive motion for summary judgment).

CONCLUSION

For the reasons stated above, defendant's motion to dismiss the amended complaint (Dk. #28) is GRANTED.  All claims against all parties to this action having been adjudicated, the Clerk is directed to enter judgment for defendants.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and in forma pauperis status is denied.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        March 28, 2013

13